# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRIENDS OF THE CAPITAL CRESCENT TRAIL**, *et al.* )<br><br>**Plaintiffs,** )<br><br>v. )<br><br>**FEDERAL TRANSIT ADMINISTRATION,** *et al.* )<br><br>**Federal Defendants.** )<br><br>v. )<br><br>**STATE OF MARYLAND,** )<br><br>**Defendant-Intervenor.** ) | **Civil Case No. 14-01471 (RJL)**<br><br>**FILED**<br>AUG - 3 2016<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia |

## MEMORANDUM OPINION

(August **3**, 2016) [Dkts. ##47, 54, 56]

Plaintiffs Friends of the Capital Crescent Trail ("FCCT"), John MacKnight Fitzgerald, and Christine Real de Azua ("plaintiffs") challenge the March 19, 2014 Record of Decision ("ROD") by the Federal Transit Administration ("FTA") and related approvals by the U.S. Fish and Wildlife Service ("FWS," and together with FTA and the Department of Transportation and the Department of Interior, "federal defendants") for the Purple Line

Project, a 16.2-mile light rail transit project in Montgomery and Prince George's Counties, Maryland. Plaintiffs raise multiple claims under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Federal Transit Act, 49 U.S.C. § 5309, Section 4(f) of the Department of Transportation Act, 23 U.S.C. § 138, the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.*, and the Migratory Bird Treaty Act, 16 U.S.C. § 703. *See generally* Am. Compl. [Dkt. #20]; First Supp. Compl. [Dkt # 33]; Second Supp. Compl. [Dkt #42]. Following the filing of the complaint, the State of Maryland joined the federal defendants as an intervenor-defendant. *See* Minute Order, July 15, 2015. Currently before the Court are cross-motions for summary judgment filed by plaintiffs, federal defendants, and defendant-intervenor. *See* Pls.' Mot. for Summ. J. [Dkt. #47]; Federal Defs.' Cross-Mot. for Summ. J. [Dkt. #54]; Def.-Intervenor's Cross-Mot. for Summ. J. [Dkt. #56]. Upon consideration of the pleadings, record, and relevant law, I find that the recent revelations regarding Washington Metropolitan Area Transit Authority's ("WMATA") ridership and safety concerns merit a supplemental Environmental Impact Statement under NEPA and reserve judgment as to the remaining issues. Accordingly, plaintiffs' motion for summary judgment is GRANTED in part, and federal defendants' and defendant-intervenors' cross-motions for summary judgment are DENIED in part.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The Court's review "is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously." *Rempfer v. Sharfstein*, 583 F.3d 860,

865 (D.C. Cir. 2009). Whereas "the role of the agency [is] to resolve factual issues," the sole "function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal citation and quotation marks omitted). The Court must determine "whether the agency acted within the scope of its legal authority, . . . explained its decision, . . . relied [on facts that] have some basis in the record, and . . . considered the relevant factors." *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995).

## ANALYSIS

### I.    Statutory Background

NEPA requires that federal agencies consider the environmental effects of proposed actions by requiring them to "carefully consider[] detailed information concerning significant environmental impacts." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Under NEPA, a federal agency must prepare an Environmental Impact Statement ("EIS") whenever a proposed government action qualifies as a "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The EIS "shall state how alternatives considered in it and decisions based on it will or will not achieve the requirements of [NEPA] and other environmental laws and policies," 40 C.F.R. § 1502.2(d), discuss "[p]ossible conflicts between the proposed action and the objectives of Federal . . . land use plans, policies and controls for the area concerned," *id.* § 1502.16(c), and "present the environmental impacts of the proposal and the alternatives in comparative form, thus sharply defining the issues and providing a clear

basis for choice among options by the decisionmaker and the public," *id.* § 1502.14. The idea is that "[s]uch information may cause the agency to modify its proposed action." *Citizens Against Rails-to-Trails v. Surface Transp. Bd.,* 267 F.3d 1144, 1151 (D.C. Cir. 2001).

Even after preparation of an EIS, an agency is obligated to undertake a supplemental EIS ("SEIS") when presented with "substantial changes in the proposed action that are relevant to environmental concerns" or "new and significant circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 10 C.F.R. § 51.92(a)(1)–(2). "[A]n agency need not supplement an EIS every time new information comes to light," *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 373 (1989), but rather only when "new information provides a *seriously* different picture of the environmental landscape,'" *Nat'l Comm. for the New River v. FERC,* 373 F.3d 1323, 1330 (D.C. Cir. 2004) (citation omitted).   Courts review an agency's decision whether to undertake an SEIS under the arbitrary and capricious standard. *City of Olmsted Falls v. FAA*, 292 F.3d 261, 274 (D.C. Cir. 2002).

The scope of review under the "arbitrary and capricious" standard "is narrow," and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).   Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962).   An agency's action is arbitrary and capricious if it "has relied on factors which Congress has not intended it to consider,

4

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## II.    WMATA's Ridership and Safety Concerns Merits an SEIS

Plaintiffs bring various claims against defendants challenging agency actions involving the Purple Line, but today I will only address plaintiffs' NEPA claim challenging defendants' failure to prepare an SEIS based on recent events that raise substantial concerns about WMATA's safety and in turn its possible decline in future ridership.  I find that defendants' failure to adequately consider WMATA's ridership and safety issues was arbitrary and capricious, and that these conditions create the "seriously different picture" that warrant an SEIS.

Plaintiffs submitted a letter on October 9, 2015, requesting that the agencies prepare an SEIS based on WMATA's recent safety concerns and declines in ridership in the Metrorail system, which, as a consequence, called the ridership forecasts for the Purple Line into question.  AR5_006470–71.  Plaintiffs pointed to a "series of incidents that have raised questions about passenger safety," explained that the National Transportation Safety Board had found that the "FTA and WMATA's Tri-State Oversight Commission are incapable of restoring and ensuring the safety of WMATA's subway system," and emphasized how these developments directly undermined the rationale for the Purple Line, providing that:

[R]idership on the WMATA subway has declined every year since

> 2009.   That is the year after the [draft Environmental Impact
> Statement] last reviewed ridership projections for the Purple Line and
> alternatives to it. . . .   The news of [declining Metrorail ridership] . . .
> casts a[n] additional shadow over the rosy projections of ever-
> increasing ridership for the Purple Line, which is inextricably linked
> to and dependent upon the use of several subway stops from beginning
> to end.

*Id.* (footnotes omitted).   Amazingly, the response from the Maryland Transit Authority

("MTA") consisted solely of the following:

> As described in the [final Environmental Impact Statement], the
> Purple Line is not part of the WMATA's Metrorail system.   The
> Purple Line would be owned by MTA and operated by MTA's
> contractor.   Therefore, the financial or other issues currently being
> experienced by WMATA do not involve the Purple Line, and they
> have no relationship to the environmental impacts of the Purple Line.
> Therefore, the WMATA-related issues cited in FCCT's letter provide
> no basis for preparing an SEIS.

AR5_000009.   Curiously, this barebones explanation was subsequently adopted by the

FTA, notwithstanding the fact that the Purple Line project is dependent on a future federal

grant of nearly a billion dollars.   June 15, 2016 Oral Arg. Tr.at 21:25–22:4, 50:7–9

[Dkt. #95].   In a memorandum dated January 7, 2016, the FTA stated, in relevant part, that

it concurred with MTA's recommendation that no supplemental documentation was

required under NEPA.   AR5_000003.   FTA simply reiterated MTA's response that "actions

and any potential issues related to WMATA, which is not the project sponsor for the Purple

Line, do not affect FTA's NEPA findings."   AR5_000004.

"In making the factual inquiry concerning whether an agency decision was

'arbitrary or capricious,' the reviewing court 'must consider whether the decision was

based on a consideration of the relevant factors and whether there has been a clear error of

judgment.'" *Marsh*, 490 U.S. at 378 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)).  "[I]n the context of reviewing a decision not to supplement an EIS," as here, courts must "carefully review[] the record and satisfy[] themselves that the agency has made a reasoned decision based on its evaluation of the significance—or lack of significance—of the new information." *Marsh*, 490 U.S. at 378. Here, defendants wholly failed to evaluate the significance of the documented safety issues and decline in WMATA ridership, skirting the issue entirely on the basis that the Purple Line is not part of WMATA.  While it is true that WMATA is a distinct entity from MTA, which would own and operate the Purple Line, AR5_000009, this does not provide a rational basis for defendants' summary conclusion that a decline in ridership thereon has *no* effect on the Purple Line, given that the previous projections estimated over one quarter of Purple Line riders would use the WMATA Metrorail as part of their trip.  *See* AR1_001973–74. [1]  Nor can I turn a blind eye to the recent extraordinary events involving seemingly endless Metrorail breakdowns and safety issues.  *See* AR5_006470–71 & nn. 2– 4 (citing public reports and media accounts discussing WMATA's safety issues and ridership decline).[2]  These serious issues, which may have long-term effects on Metro

---

[1] *See* Paul Duggan , *Metro acknowledges breakdowns might be adding to a ridership decline*, Wash. Post (Oct.   6,   2015)   https://www.washingtonpost.com/local/trafficandcommuting/metro-says-subway-breakdowns-might-be-adding-to-a-steady-ridership-decline/2015/10/06/4bb59716-6c35-11e5-b31c-d80d62b53e28_story.html. (cited at AR5_006470 n 2.).

[2] Furthermore, these safety issues show no signs of abating in the near future. *See, e.g.,* Press Release, WMATA, Orange and Silver line service impacts to continue Saturday following derailment (July 29, 2016), http://www.wmata.com/about_metro/news/PressReleaseDetail.cfm?ReleaseID=6143; Press Release, WMATA, Metro releases preliminary findings of investigation into Saturday smoke incident outside Friendship Heights (April 25, 2016), http://www.wmata.com/about_metro/news/PressReleaseDetail.cfm?ReleaseID=6096;   Press   Release, WMATA, All Metrorail service will be suspended Wednesday, March 16, for emergency inspections (March 15, 2016), http://www.wmata.com/about_metro/news/PressReleaseDetail.cfm?ReleaseID=6082;

ridership, only underscore how important it was for defendants to take the requisite hard look at the potential effect of Metro's safety issues on future Purple Line ridership and any related environmental issues. *See, e.g., Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 678 (5th Cir.1992) (citation omitted) (court must look outside the administrative record to determine whether the agency adequately considered the environmental effects of a particular project). At a minimum, WMATA and the FTA's cavalier attitude toward these recent developments raises troubling concerns about their competence as stewards of nearly a billion dollars of the federal taxpayers' funds.

## III.   Remedy

The Administrative Procedure Act governs remedies for NEPA violations and provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *see Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 413 ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements."). "Pursuant to the case law in this Circuit, vacating a rule or action promulgated in violation of NEPA is the standard remedy." *Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007). The decision whether to vacate depends on "the seriousness of the order's deficiencies" and "the disruptive consequences of an interim change . . . ." *Allied-*

---

Press Release, WMATA, Orange and Silver line return to 6-minute rush hour service for first time since Stadium-Armory substation fire (Dec. 30, 2015), http://www.wmata.com/about_metro/news/PressReleaseDetail.cfm?ReleaseID=6022.

*Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Here, defendants failed to engage in the requisite supplemental analysis with respect to important recent information that calls into question, at a minimum, whether nearly a billion dollars in federal funding should ultimately be committed to a project for which serious questions have been raised as to its future viability. While a temporary halt in the project is not ideal, it would make little sense and cause even more disruption if defendants were to proceed with the project while the SEIS was being completed, only to subsequently determine that another alternative is preferable. Accordingly, it is hereby ordered that the Record of Decision be vacated and remanded to the defendants for the preparation of an SEIS as expeditiously as possible, and consistent with NEPA's requirements. Common sense requires no less.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED in part, and federal defendants' and defendant-intervenors' cross-motions for summary judgment are DENIED in part. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge