UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE CAPITAL CRESCENT TRAIL, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FEDERAL TRANSIT ADMINISTRATION, *et al.* )<br>)<br>Federal Defendants. )<br>)<br>v. )<br>)<br>STATE OF MARYLAND, )<br>)<br>Defendant-Intervenor. ) | Civil Case No. 14-01471 (RJL)<br><br>**FILED**<br>NOV 22 2016<br>Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

MEMORANDUM OPINION
(November 22, 2016) [Dkts. ## 98, 99]

Currently before the Court are federal defendants' Motion to Alter or to Amend the Court's Judgment [Dkt. # 99], and defendant-intervenor Maryland's Motion to Alter or to Amend the Court's Judgment [Dkt. # 98], both filed pursuant to Federal Rule of Civil Procedure 59(e). Upon careful consideration of the motions, the parties' responses thereto, the prior motions for summary judgment, the applicable law, and the entire record in this case, I reaffirm my judgment that defendants violated the Administrative Procedure Act ("APA") when they wholly failed to consider the impact that Washington Metropolitan Area Transit Authority ("WMATA") Metrorail's recent safety and ridership issues could

have on the Purple Line Project, and I therefore decline to reinstate the Purple Line Record of Decision ("ROD"). Nevertheless, I find that the Federal Transit Administration ("FTA") must be given the initial opportunity to assess the significance of this new information and determine whether a full supplemental environmental impact statement ("SEIS") is necessary. Accordingly, I hereby remand the ROD to the agency for that limited purpose. As such, federal defendants' and defendant-intervenor Maryland's motions to alter or amend the judgment are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In March 2014, the Federal Transit Administration issued a ROD approving the Purple Line Project, a 16.2-mile light rail project in Montgomery and Prince George's Counties, Maryland. Plaintiffs Friends of the Capital Crescent Trail ("FCCT"), John MacKnight Fitzgerald, and Christine Real de Azua (collectively, "plaintiffs") filed suit in this Court against the FTA, the U.S. Fish and Wildlife Service ("FWS"), the Department of Transportation, and the Department of the Interior (collectively, "federal defendants").[1]

In their amended and supplemental complaints, plaintiffs challenge the FTA's ROD and related approvals by the FWS under the Administrative Procedure Act, 5 U.S.C. § 706, and raise multiple claims under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Federal Transit Act, 49 U.S.C. § 5309, the Federal-Aid Highway Act, 23 U.S.C. § 138, the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.*, and the Migratory Bird Treaty Act, 16 U.S.C. § 703. *See generally* Am. Compl. [Dkt. # 20]; First

---

[1] Following the filing of the complaint, the State of Maryland joined the federal defendants as an intervenor-defendant. *See* Minute Order, July 15, 2015.

Supp. Compl. [Dkt. # 33]; Second Supp. Compl. [Dkt. # 42].

On August 3, 2016, I granted partial summary judgment to plaintiffs, finding that the FTA wholly failed to consider the significance of WMATA's ridership and safety issues when it determined that NEPA regulations did not require the agency to prepare a SEIS for the Purple Line Project. In essence, I concluded that the decision to disregard these safety and ridership issues was arbitrary and capricious under the APA, instructed the defendants to prepare an SEIS as expeditiously as possible, and vacated the Purple Line ROD. *See* Mem. Op. and Order Granting Partial Summ. J. [Dkts. ## 96, 97.]

Pursuant to Federal Rule of Civil Procedure 59(e), federal defendants and defendant-intervenor Maryland both filed motions to alter or amend the Court's judgment. Both motions focused on the Court's prescribed remedy, and requested that the Court (1) remand to the FTA to assess the significance of WMATA's safety and ridership issues and determine whether an SEIS is required; and (2) to reinstate the Purple Line ROD during remand.

## STANDARD OF REVIEW

Although the Court has broad discretion to alter or amend a judgment pursuant to Rule 59(e), granting such a motion is an "extraordinary remedy which should be used sparingly." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015). The Court need not grant a Rule 59(e) motion unless it "finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

Given this high burden, Rule 59(e) motions are not an "opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), nor do they provide losing parties with a means to advance "a new . . . theory which could have been raised during the original proceedings." *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) (quotation omitted).

## ANALYSIS

### I. The FTA violated the APA when it refused to consider the effect that WMATA's safety and ridership issues could have on the Purple Line project.

In my August 3, 2016 Opinion granting partial summary judgment, I held that defendants violated the APA when they "wholly failed to evaluate the significance of the documented safety issues and decline in WMATA ridership" and refused to prepare an SEIS for the Purple Line. Mem. Op. at 7. I reaffirm that decision today. When presented with information about WMATA's recent ridership and safety issues, both the FTA and Maryland took the position that WMATA's ridership and safety issues had "no relationship to the environmental impacts of the Purple Line." AR5_000009 (emphasis added); Fed. Defs.' Mem. in Support of Cross-Mot. for Summ. J at 30 [Dkt. # 55]. But the administrative record flatly contradicts that conclusion. The Purple Line's final environmental impact statement ("FEIS"), the very document that plaintiffs want the FTA to supplement, explicitly stated that one of the Purple Line's purposes is to "[p]rovide better connections to [WMATA] Metrorail services." AR1_001918. The FEIS explained how the Purple Line will connect with multiple Metrorail stations, included ridership projection data about riders using combined Purple Line/Metrorail transit, and projected that by 2040,

27% of Purple Line boardings "would be trips that also include riding Metrorail." *See, e.g.*, AR_001927, AR_001973.

As a result, the agencies' categorical decision not to evaluate the significance of WMATA's new safety and ridership issues was arbitrary and capricious. In the Purple Line FEIS, the agencies examined the interconnected relationship between WMATA and the Purple Line, but when presented with new information about WMATA's ridership and safety, they changed tack and asserted that no SEIS was required, on the grounds that WMATA and the Purple Line would be separately owned and operated. AR5_00009. This inconsistent (and untenable) position was itself arbitrary, as our Circuit's precedent makes clear that "agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996).

More importantly, the agencies' misplaced reliance on the legal distinction between WMATA and Purple Line prevented them from actually evaluating the significance of this new information, and thereby compounded their error. When reviewing an agency's decision not to supplement an environmental impact statement, courts are instructed to "carefully review[] the record and satisfy[] themselves that the agency has made a reasoned decision based on its evaluation of the significance—or lack of significance—of the new information. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). Here, the record indicates that neither Maryland, nor the FTA, undertook a careful evaluation of the significance of the new WMATA-related information, but rather attempted to sidestep the information and rely erroneously on the formal, legal distinction

between WMATA and the Purple Line. As such, the resulting refusal to consider the new WMATA-related information was arbitrary and capricious. It thus remains imperative that the agencies consider this new and relevant information.

## II. The Court will amend its judgment and remand to the FTA to make the threshold determination of whether an SEIS is required.

Upon consideration of federal defendants' and defendant-intervenor's motions, I will, however, amend my prior judgment in one limited respect. Rather than directly order the FTA to prepare a full SEIS, I will instead remand to the agency to determine the significance of WMATA's ridership and safety issues and determine what level of additional environmental analysis is required by the its NEPA regulations. *See* 23 C.F.R. § 771.130(c) ("Where the Administration is uncertain of the significance of the new impacts, the applicant will develop appropriate environmental studies or, if the Administration deems appropriate, an EA [Environmental Assessment] to assess the impacts of the changes, new information, or new circumstances.").

Our Circuit Court's precedent indicates that the "initial decision whether a supplemental EIS is required should [generally] be made by the agency, not by a reviewing court." *Friends of the River v. Fed. Energy Regulatory Comm'n*, 720 F.2d 93, 109 (D.C. Cir. 1983). In its December 2015 response to plaintiffs, the Maryland Transit Authority stated that the "WMATA-related issues ... provide no basis for preparing an SEIS." AR5_000009; *see also* Fed. Defs.' Mem. in Support of Cross-Mot. for Summ. J at 30 [Dkt. # 55] (adopting the same position). Plaintiffs argue that these statements demonstrate that the FTA already made its "initial decision" about an SEIS and should not

receive another opportunity to consider the WMATA-related issues. But the FTA's prior position was premised on the erroneous argument that WMATA's issue bore no relationship to the Purple Line as a result of their separate ownership. In short, the FTA never examined WMATA's issues on the merits or determined their significance—namely, whether they present the "seriously different picture" that would require an SEIS. *Nat'l Comm. for the New River v. Fed. Energy Regulatory* Comm'n, 373 F.3d 1323, 1330 (D.C. Cir. 2004). Nevertheless, I recognize that a significance determination like this is the sort of decision that "requires a high level of technical expertise" that would benefit from the "informed discretion of the responsible federal agencies." *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).

In that regard, I find our Circuit Court's 1983 decision in *People Against Nuclear Energy v. Nuclear Regulatory Comm'n* particularly instructive here. 678 F.2d 222, *rev'd on other grounds by Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766 (1983). In that case, a local community group asked the Nuclear Regulatory Commission to consider, under NEPA, the effect that re-opening a nuclear power plant would have on "psychological distress and community deterioration." *Id.* at 225. The Commission declined to consider those issues as part of its NEPA analysis. *Id.* at 223. On review, the Court held that "psychological effects and community deterioration" fell within the scope of NEPA analysis and that the agency erred in declining to consider them.[2] *Id.* at 234.

---

[2] Although the Supreme Court subsequently reversed the D.C. Circuit on the substantive point of whether NEPA analysis encompasses the psychological health effects of a particular project, *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766 (1983), the Circuit Court's treatment of the procedural issue—i.e., that the Court, upon determining that the agency disregarded a relevant issue, should remand to the agency to examine the issue anew and make the threshold determination of whether an SEIS is

However, the Court declined to order the Commission to prepare an SEIS, and instead gave the agency the opportunity to make a "threshold determination of whether changed circumstances and new information regarding environmental effects require a supplemental EIS." *Id.* at 226. The same situation exists here: the agency initially declined to consider a subset of relevant information whatsoever, and now must be given the opportunity in the first instance to consider the information fully, rather than have the court step in and conduct the significance analysis itself.

For these reasons, I will remand to the defendants to determine whether WMATA's recent ridership and safety issues require an SEIS. In their briefs and proposed orders, both federal defendants and defendant-intervenor Maryland have proposed a schedule whereby the FTA will conduct this assessment as expeditiously as possible, and will submit the final assessment to the Court with a determination as to whether an SEIS is required. *See* Proposed Order [Dkt. # 98-5], Proposed Order [Dkt. # 99-3]. If the FTA determines that an SEIS is *not* required, then federal defendants and Maryland will file renewed motions for summary judgment on the limited issue of whether WMATA safety and ridership issues require an SEIS. The court adopts their proposed schedule in the Order accompanying this Memorandum Opinion.

### III. The Court will not reinstate the Purple Line ROD.

Lastly, I decline to reinstate the Purple Line ROD because I find that vacatur remains the appropriate remedy in this case (and certainly does not constitute the clear error

---

required—remains, at the very least, highly persuasive.

or manifest injustice that would require me to amend my prior judgment). As I already noted in my August 3, 2016 Opinion, vacatur is the standard remedy for a NEPA violation. *Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) ("Pursuant to the case law in this Circuit, vacating a rule or action promulgated in violation of NEPA is the standard remedy."); s*ee also Am. Bioscience v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("If an appellant . . . prevails on its APA claim, it is entitled to relief under that statute, which normally will be . . . vacatur . . . .")

Whilte it is true that a reviewing court has the discretion to remand an agency decision without vacatur, in determining whether to do so, the Court must consider the "seriousness of the order's deficiencies" and the potentially disruptive consequences that could flow from vacatur. *Allied-Signal v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Indeed, I evaluated and applied those very factors when I vacated the ROD in my original Opinion and Order granting partial summary judgment. After considering the additional information provided by federal defendants and defendant-intervenor Maryland in their Rule 59(e) motions, I see no reason to alter my judgment. How so?

With respect to the first *Allied-Signal* factor, I point to the defendants' seemingly cavalier attitude towards WMATA's safety and ridership issues. Although the Purple Line's FEIS examined the close connection between WMATA and the Purple Line, the FTA and Maryland *summarily* disregarded new information about WMATA's safety and ridership numbers on the inexplicable grounds that no such WMATA-Purple Line connection existed. The seriousness of this deficiency is underscored by the size, scope,

and cost of this major infrastructure project. Nevertheless, this does not itself require vacatur, as it remains possible that the agency will carefully assess these issues on remand and determine that a full SEIS is *not* in fact required by the agency's regulations. *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) ("When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur.")

In the final analysis, it is my consideration of the second *Allied-Signal* factor that compels my decision to vacate the Purple Line ROD. As federal defendants and defendant-intervenor Maryland explained in their Rule 59(e) motions, the Purple Line project is a major infrastructure project involving complex contractual relationships and intricate construction schedules. While a protracted delay in the project could impose significant financial costs and logistical difficulties on the public and private entities involved in its construction, so too, if not worse, would be the disruptive consequences of allowing it to proceed without the necessary NEPA analysis. Defendants unfortunately discuss the potentially disruptive effects of vacatur as if they occur in a vacuum, without weighing the potentially disruptive effects that could flow from remand without vacatur. They do not seem to consider the disruptive consequences that could flow from allowing the project to proceed apace (and perhaps take irreversible steps towards completion) without completing all of the analysis required under NEPA, only to have the agency determine as a result of the required analysis that some other alternative is now preferable. *See Humane Soc'y of U.S.*, 520 F. Supp. 2d at 38 (D.D.C. 2009) (vacating rule for failure to comply with NEPA, and noting that the parties had not demonstrated how remanding without vacatur "would

preserve NEPA-contemplated opportunities" for the program at issue). Vacatur ensures that the project will proceed only with the benefit of a fully fleshed out consideration of the issues required by NEPA. For that reason, I decline to amend my prior judgment and reinstate the ROD.

## CONCLUSION

For all of the reasons stated above, the Court DENIES IN PART and GRANTS IN PART federal defendants' Motion to Alter or to Amend the Court's Judgment [Dkt. # 99] and defendant-intervenor Maryland's Motion Pursuant to Alter or to Amend the Judgment [Dkt. # 98]. An Order consistent with this decision accompanies the Memorandum Opinion.

RICHARD J. LEON
United States District Judge