# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRIENDS OF THE CAPITAL CRESCENT TRAIL** *et al.*, ) ) ) ) **Plaintiffs,** ) ) v. ) ) **FEDERAL TRANSIT ADMINISTRATION** *et al.*, ) ) ) ) **Federal Defendants.** ) ) ) v. ) ) **STATE OF MARYLAND,** ) ) ) **Defendant-Intervenor.** ) | Civil Case No. 14-1471 (RJL) **FILED** **JUL 3 1 2017** Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## MEMORANDUM OPINION
(July 31, 2017) [Dkt. # 155]

Currently before the Court is plaintiffs' Rule 59(e) Motion for Reconsideration or Clarification, filed pursuant to Federal Rule of Civil Procedure 59(e) [Dkt. # 155]. Plaintiffs ask the Court to either "clarify" or "confirm" that it considered their claim about the Purple Line's potential effects on air and noise pollution, or to reconsider those claims under Federal Rule of Civil Procedure 59(e). Because the Court already considered the plaintiffs' noise and air pollution arguments when it ruled on the parties' summary judgment motions, and because plaintiffs fail to meet Rule 59(e)'s strict standard for reconsideration, the Court will DENY the Motion.

## BACKGROUND

At this late stage in the litigation, the Court will assume familiarity with this case's factual and procedural background, which are recounted in earlier memorandum opinions. *See* Nov. 22, 2016 Mem. Op. at 2–3 [Dkt. # 109]; May 22, 2017 Mem. Op. at 3–5 [Dkt. # 138]; June 9, 2017 Mem. Op. at 1–3 [Dkt. # 149]. On May 22, 2017, I issued a memorandum opinion granting partial summary judgment to plaintiffs and ordering defendants to prepare a supplemental environmental impact statement (SEIS) addressing the effect that WMATA Metrorail's ridership issues could have on the planned Purple Line Project. May 22, 2017 Mem. Op. at 6–12 [Dkt. # 138]. Soon thereafter, on May 30, I issued a final judgment that granted summary judgment to defendants on all of plaintiffs' remaining claims under the National Environmental Policy Act ("NEPA"), the Federal Transit Act, Section 4(f) of the Department of Transportation Act, the Endangered Species Act, and the Migratory Bird Treaty Act, and on June 9, I issued a memorandum opinion explaining my reasoning to the parties. Final Judgment [Dkt. # 142]; June 9, 2017 Mem. Op. [Dkt. # 149]. On June 26, plaintiffs moved for reconsideration, asking for "clarification or confirmation" that the Court considered their noise and air pollution claims, or in the alternative for reconsideration of those claims. Pls.' Rule 59(e) Motion for Reconsideration or Clarification [Dkt. # 155].

## STANDARD OF REVIEW

District courts have broad discretion to alter or amend a judgment pursuant to Rule 59(e), but granting such a motion is an "extraordinary remedy which should be used sparingly." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015). Rule

59(e) motions are not "simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), nor do they provide losing parties with a means to advance "a new . . . theory which could have been raised during the original proceedings." *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) (quotation omitted). Instead, under the standard set forth by our Circuit, the Court need not grant a Rule 59(e) motion unless it "finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

## ANALYSIS

In my June 9 memorandum opinion, I explained my reasons for granting summary judgment to the defendants on all of the plaintiffs' remaining claims under NEPA, Section 4(f) of the Department of Transportation Act, the Endangered Species Act, and the Migratory Bird Treaty Act. As relevant for purposes of this motion, plaintiffs included in their summary judgment papers a long list of asserted NEPA-related deficiencies with the Purple Line's Alternatives Analysis/Draft Environmental Impact Statement ("AA/DEIS") and its Final Environmental Impact Statement ("FEIS"). In the interests of brevity and judicial economy, I declined to individually address each asserted deficiency in minute detail. Instead, I explained to the parties that I had carefully reviewed the plaintiffs' remaining NEPA-related claims and the administrative record and had concluded that plaintiffs had "not identified any fatal flaw in the AA/DEIS or the FEIS" such that they

3

were entitled to summary judgment. Dkt. # 149 at 7. I further explained that defendants had, in my judgment, taken a "hard look" at the Purple Line's environmental impacts during the NEPA process, and that plaintiffs' claims were legally insufficient arguments that defendants "did not consider certain issues with the level of detail they would have liked, or did not reach the substantive conclusion they desired." *Id.*

In sum, my opinion made clear that I had considered *all* of plaintiffs' NEPA claims, which necessarily included their claims about noise and air pollution. Given the sheer number of claims plaintiffs raised in their summary judgment pleadings, the Court's concise treatment of their NEPA-related claims was neither inappropriate nor unusual, and courts regularly reject parties' claims with less explanation than was included in the June opinion. *See Wash. Gas Light Co. v. F.E.R.C.*, 603 F.3d 55, 57 (D.C. Cir. 2010) ("We have considered Washington Gas's other arguments and find them without merit."); *Honeywell Intern., Inc. v. E.P.A.*, 372 F.3d 441, 451 (D.C. Cir. 2004) ("We have considered petitioners' remaining arguments, and finding them without merit, we deny the petitions for review."); *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 227, 241 (D.D.C. 2011) ("The Court has considered the remaining arguments tendered by the parties and has concluded they are without merit."); *Freeman v. Medstar Health Inc.*, 87 F. Supp. 3d 249, 252 (D.D.C. 2015) ("Having considered all of Defendants' remaining arguments . . ., the court concludes that each is without merit."). Nevertheless, plaintiffs now argue that the Court did not "analyze" their noise and air pollution claims, and ask for "clarification," "confirmation," or reconsideration of those claims. Dkt. # 155 at 1, 4.

Rule 59(e) imposes a high burden on parties seeking reconsideration of a court's

4

final judgment—the movant must show that the original judgment was in clear error or worked a manifest injustice, that there is newly available evidence, or that there has been an intervening change in controlling law. *Patton Boggs*, 683 F.3d at 403; *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004). Plaintiffs' motion does not meet any one of the prongs under that standard. Instead, their motion is simply a repetition and repackaging of the arguments they already made in their summary judgment papers. As such, their motion must be denied.

Although plaintiffs are not entitled to reconsideration of the final judgment, I will exercise my discretion to very briefly describe my reasoning with respect to plaintiffs' air and noise pollution claims in greater detail, in the hope of providing additional clarity to the parties and facilitating the final resolution of this case.

## I. Air Pollution Claims

In their summary judgment papers, and again in their motion for reconsideration, plaintiffs argue that defendants violated 40 C.F.R. § 1502.16(e)'s command that the agency discuss the "energy requirements and conservation potential of various alternatives and mitigation measures." Specifically, plaintiffs argue that defendants "ignored" the energy consumption that will come from operating the Purple Line's train cars on a daily basis, and thus failed to consider the air pollution that will be emitted by the power plants generating that additional electricity. Dkt. # 155 at 8. I disagree.

The administrative record shows that the defendants reasonably considered the energy consumption and emissions impact of the Purple Line and its alternatives. The Purple Line's AA/DEIS included a detailed analysis that estimated how much energy the

5

various alternatives would consume, and that analysis clearly accounted for the daily energy cost of operating train cars. AR1_012135–37. The AA/DEIS and FEIS also included an assessment of the projected air emissions from the project, and concluded that the "differences in predicted $CO_2$ emissions burden for the alternatives can be considered insignificant." AR1_012097. Furthermore, the defendants responded specifically in the FEIS to the plaintiffs' concern about the emissions that could be generated by the power plants (unconnected to the Purple Line) that will generate the power that will operate the train cars. The FEIS explained that the electricity used to power the Purple Line will depend on the "future energy market and regulations on power plant emissions," and "could be produced by a variety of methods, some of which produce fewer emissions over the current energy mix," and noted that "implementation of advanced emission reduction technologies at power plants would decrease air pollutant emissions of particulate matter, sulfur dioxide, nitrogen oxides, and mercury." AR1_002378. In sum, the record shows that the agency discussed the "energy requirements and conservation potential of various alternatives and mitigation measures," as required by 40 C.F.R 1502.16(e), and otherwise took a hard look at the emissions and air pollution issues presented by the project. Plaintiffs' argument, as explained in the June 9 opinion, amounts to nothing more than an argument that defendants did not "consider the issue[] with the level of detail they would have liked, [n]or did [they] reach the substantive conclusion they desired." Dkt. # 149 at 7. This, of course, is insufficient.

## II. Noise Pollution Claims

Plaintiffs also argued in their summary judgment pleadings that defendants failed to adequately assess the Purple Line's projected noise impacts. But the administrative record demonstrates, incontrovertibly, that defendants carefully considered the Purple Line's potential noise impacts and identified reasonable noise mitigation measures for the project, as they were required to do. Indeed, the FEIS included a detailed noise analysis that identified eighty-three representative noise-sensitive locations in the Purple Line's path, measured existing noise levels at those locations, estimated the noise likely to be created by the Project, and identified reasonable mitigation measures—like noise walls and vehicle skirts—intended to reduce noise effects. AR1_002094–102. Undeterred, plaintiffs point to an FTA guidance document that *recommends* that agencies assess maximum noise levels in their environmental study documents and argue that the agencies' failure to include data on these levels renders the noise analysis fatally deficient. Dkt. # 155 at 5 (citing FTA's 2006 Transit Noise and Vibration Impact Assessment Manual at § 3.2.2). However, the agencies clearly and reasonably explained in the FEIS that maximum noise level analysis "is not required in an environment impact assessment because it does not take into account the number and duration of transit events, which is important to people's reaction to noise." AR1_000166. In sum, the record shows that the agencies reasonably considered the project's noise impacts, and plaintiffs fail to identify any fatal flaw in that analysis. Their claim amounts to an argument that defendants considered an issue in *less* detail than they would have liked, but this is insufficient to show that the defendants were arbitrary and capricious in their noise assessment.

In their motion, plaintiffs ask the Court to consider yet again their "argument" that the Purple Line's noise impacts constitute an impermissible "use" of parks, in violation of Section 4(f) of the Department of Transportation Act. But plaintiffs' summary judgment papers included no such argument. Instead, plaintiffs' memorandum in support of summary judgment included a conclusory statement that "[thirteen] parks will be affected by Purple Line noise . . . and Defendants underreported these noise impacts and other uses of parks . . . ." Mem. in Supp. of Mot. for Summ. J. at 43 [Dkt. # 47-1]. Plaintiffs' reply brief included a similarly bald statement that "the noise and other harmful effects on the Project . . . constitute a permanent use of these parks," and argued that the Purple Line's brakes, horn, and bells will make noise near the Elm Street Park, constituting a "use" of the park. Pls.' Reply Brief at 33 [Dkt. # 59]. Plaintiffs did nothing, however, to explain how noise constitutes a park use under Section 4(f), nor did they cite any authority to support their position (nor, for that matter, do they offer any such authority now). As such, I appropriately refrained from fashioning a cogent argument out of plaintiffs' conclusory assertion. Although plaintiffs' argue that the Court "overlooked" their legal theory, they advanced no such theory at the time, and plaintiffs cannot come back and do so now.

## CONCLUSION

For all of the reasons stated above, the Court DENIES plaintiffs' Motion for Reconsideration or Clarification. An Order consistent with this decision accompanies the Memorandum Opinion.

RICHARD J. LEON
United States District Judge